JOHN P. DONAHOE *vs.* THE STAR PUBLISHING COMPANY, a Corporation of the State of Delaware.

*Libel—Language Used—Libellous per se—Evidence—Truth—Constitution—Statute—Special Plea—General Issue; What Proved Under—Privilege—Malice—Candidate for Office— Charging the Commission of Crime—Not Qualified Privilege—False Allegation of Fact—Damages; Mitigation Of.*

1. When the libellous matter set out in each count of the plaintiff's declaration is clearly libellous and actionable *per se*, and is stated in language that is neither so ambiguous or equivocal as to require explanation by reference to any extrinsic matter to show that it is actionable, the plaintiff is not called upon to make allegations further than the supposed libellous matter as to the offense charged; neither is he called upon to construe the said libellous matter, nor is he bound to select and rely upon any offense or charge. Under our law and practice, whatever is admissible in mitigation of damages may be proved under the general issue, and cannot be specially pleaded.

2. In an action for libel the defendant is not permitted to offer any evidence which proves, or tends to prove, the truth of the charge.

3. When the words of the alleged libel impute to the plaintiff a crime punishable by the laws of the State they are actionable in themselves. In such case the law presumes malice, and implies that the plaintiff has sustained some damage. Upon the plea of not guilty he would be entitled to a verdict for nominal damages, and also to such actual damages as he may prove. If express malice is proved, viz., that the libel was composed and published in a vindictive and malevolent spirit, with a malicious intent to injure the plaintiff, the plaintiff would be entitled to punitive or exemplary damages also. Express malice, however, must be proved; it is never presumed or implied. It may be proved either directly or indirectly. Solely for the purpose of rebutting express malice, and in mitigation of damages, and in no manner as a justification or in bar of the action, the defendant may be permitted to put in evidence the acts, expressions and conduct of the plaintiff, and the conditions surrounding him at the time set forth in the alleged libel; and also to prove the general reputation and rumors which came to the defendant before the publication of the libel.

5, Ordinarily under the general issue the defendant may prove that the publication complained of was a privileged one.

6. The right of free discussion in the public press of the conduct of public officers, and of candidates for public office, is safeguarded by the Constitution of the United States and of the several States.

7. In an action for damages for writing or publishing an alleged libel, the defendant, under a statute of this State (*Ch. 449, Vol. 11, Laws of Delaware*) may plead and prove the truth of the charge, and that it was written or published properly for public information, and with no malicious or mischievous motives. If such a plea is made and sustained by proof, it is a complete defense to the action. But if the defendant files no such plea of justification in bar of the action, but only the plea of not guilty, the utmost effect of evidence that the defendant had probable cause to believe that his charge against the plaintiff was true, and that the publication was made for the public good, would be to negative express malice and thus defeat the claim for exemplary damages.

8. False allegations of fact, charging a candidate for office with a criminal offense are not privileged, and if the charges are false, good faith and probable cause are no defense. In such case the publisher of the libel takes his own risk, and can ustify only by pleading and proving the truth of the charges.

9. Doctrine of privileged publication held not to apply to this case.

10. Jury instructed in any event to find a verdict for the plaintiff for nominal damages.

(*December 19, 1902; February 20, 1903.*)

LORE, C. J., and SPRUANCE, J., sitting.

*William S. Hilles* for plaintiff.

*J. Harvey Whiteman* and *Victor B. Woolley* for defendant.

Superior Court, New Castle County, November Term, 1902.

ACTION ON THE CASE FOR LIBEL (No. 54, November Term, 1900). Demurrer.

LORE, C. J.:—The declaration consists of three counts.

The libellous matter set out in the first count is as follows:

"We trust that the Democratic voters of the Fourth Representative District of this city (meaning the said city of Wilmington) will not make it necessary for us to further expose the treachery of John P. Donahoe (meaning the said plaintiff) with respect to his action at Dover last winter on the last day of the legislative session (meaning the legislative session of the State of Delaware held in the year 1899, in which Legislature the said plaintiff was a Representative in the General Assembly), nor do we wish to speak further of his (the plaintiff's) ridiculous war record unless we are compelled to do so. We cannot believe that the Democrats of the Fourth will so far forget their own interests, and those of their party, as to again confide them to the keeping of a man (meaning the plaintiff) who has more than once proven false to the faith reposed in him, and who is even now suspected of having made a bargain with Addicks (meaning a certain person thought to be a candidate for the office of United States Senator from the State of Delaware) for assistance in securing his return to the Legislature (meaning the Legislature of the said State), where he will be expected to cast his vote for the gas man (meaning the said Addicks) for United States Senator. Only the fear of bodily harm prevented Donahoe (meaning the plaintiff) at the last session of the General Assembly from joining the ranks of Farlow, Clark and King

(meaning three members of the said General Assemby of 1899) in a consummation of the disgraceful conspiracy by which a seat in the highest legislative body of a nation (meaning the United States Senate) was to be handed over for so much cash in hand. Not having the courage to face the storm of protest and denunciation which he (meaning the plaintiff) saw had been evoked by the votes of the other renegades, he (meaning the plaintiff) resorted to the flimsy trick of feigning sickness, and made repeated efforts to leave the House at the most critical stage of the proceedings, in the hope of thus giving his purchaser (meaning the said Addicks) the benefit of at least half a vote by his absence. That he (meaning the plaintiff) was not permitted to do even this much for his master (meaning the said Addicks) was due entirely to the determined stand taken by a few wrathful Democratic citizens who went upon the floor of the House and compelled him (meaning the plaintiff) by force to remain in his seat. Do our Democratic friends of the Fourth want to take the risk of having this scene repeated at the next Senatorial election (meaning the election for United States Senators to be held by the General Assembly of the State of Delaware at its next session, to be held in the year 1901)? Do they want to send a man to Dover who needs a bodyguard to prevent him from betraying them to the enemy? Do they want to trust their legislative interests to one who sells them out and cravenly deserts his post on the pretense that he's got the belly-ache? These charges against Donahoe (meaning the plaintiff) have been made time and again, publicly and privately, by reputable citizens and good Democrats, and he (meaning the plaintiff) has never attempted to deny them, and in his cringing silence we read an abject confession of his guilt. And yet this man (meaning the plaintiff), steeped in the mire of a foul conspiracy against his own party and against public decency, has the hardihood to again offer himself to the voters of his district as a fit person to be entrusted with the honorable and responsible duties of a legislator (meaning the then pending canvass being made by the plaintiff to be renominated as a candidate for the Gen-

eral Assembly to be voted for at the next general election). It would be a disgrace to the Democratic voters of the Fourth District (meaning the District as a Representative from which in the General Assembly the plaintiff was then a candidate), a disgrace to their party and a lasting disgrace to Delaware to send a man of Donahoe's (meaning the plaintiff) character to represent any respectable community in the General Assembly. Surely the Fourth District (meaning the said District) has within its limits many Democrats of ability whose hands are not soiled by the slime of Addicks' (meaning the said Addicks) money, and who would be willing to serve their neigbors in a public capacity."

The libellous matter set out in the second count is as follows :

"Only the fear of bodily harm prevented Donahoe (meaning the plaintiff) at the last session of the General Assembly (meaning the session of the said General Assembly in which this plaintiff was a member as aforesaid) from joining the ranks of Farlow, Clark and King (meaning three members of the said General Assembly) in a consummation of the disgraceful conspiracy by which a seat in the highest legislative body of a nation (meaning the United States Senate) was to be handed over for so much cash in hand (meaning that this plaintiff had received while a member of the said General Assembly a bribe in the way of a cash consideration to induce him to cast his vote for a certain candidate for the United States Senate before the said General Assembly)."

The libellous matter set out in the third count is as follows :

That he (the said plaintiff), while a member of the General Assembly of the State of Delaware, had been paid and accepted a bribe to vote for one John Edward Addicks as a Senator of the United States from the State of Delaware.

These counts respectively, state the defendant's malicious intent ; set out the alleged libellous matter, and state that it refers to the plaintiff.

There are no allegations in the declaration outside of the

alleged libellous matter, specifying any particular offense. The several counts merely designate the charges as " the misconduct and offenses " as disclosed in the alleged libellous matter.

To each of these three counts the defendant demurs specially, naming ten causes of demurrer to the first count, twelve to the second and eleven to the third.

Counsel for the plaintiff in their brief summarize these causes in this language ; the plaintiff " has merely set out the words of the publication which he considered libellous, and nowhere alleges the imputation of any specific grievance. The publication is reproduced without innuendoes assigning any specific libellous meaning to the words used. The defendant is therefore unable to plead with certainty and safety to the said counts." They contend also that " the allegations must show not only that the words apply to the plaintiff, but also in what sense they are used, and how they are defamatory. The defendant is entitled to be informed by the declaration what is imputed to him ; what injury he is said to have inflicted, and how he is said to have inflicted it."

The defendant claims that extrinsic to the alleged libellous matter, the narr should allege what injury to the plaintiff was imputed therein ; what specific offense and misconduct was so imputed, and upon what charges or statements therein the plaintiff relies.

The plaintiff replies that the alleged libellous matter is sufficiently explicit upon all these points.

In *1 Chitty on Pleading, 400*, the law is thus stated :— " Where the libel or slander is *prima facie* or *per se* actionable, a declaration stating the defendant's malicious intent and the defamatory matter, showing that it refers to the plaintiff, is sufficient without any *prefatory inducement* of the circumstances under which the words, etc., were spoken, etc., and if unnecessarily an inducement be stated, it is not material to prove it. But if the libel or words do not *naturally* and *per se* convey the meaning the plaintiff would wish to assign to them, or are ambiguous and equivocal, and require

explanation by reference to some *extrinsic matter* to show that they are actionable, it must be expressly shown that such matter existed, and that the slander related thereto."

In *Carter vs. Andrews, 33 Mass., 1,* Chief Justice Shaw says: "When therefore, words are set forth as having been spoken by the defendant of the plaintiff, the first question is whether they impute a charge of felony or any other infamous crime punishable by law. If they do, an innuendo undertaking to state the name in other words is useless and superfluous."

" An innuendo must not introduce new matter, or enlarge the natural meaning of the words. It must not put upon them a construction that they will not bear. It cannot alter or extend the sense of the defamatory words, or make that certain which is in fact uncertain. Therefore if the meaning of the language is plain no innuendo is needed."

*Newell on Defamation, etc., 619.*

The alleged libellous matter set out in each count of the declaration in this case, is clearly libellous, and is stated in language that is neither so ambiguous or equivocal, as in our judgment to require explanation by reference to any extrinsic matters to show that it is actionable. In each case it clearly appears to be actionable *per se.*

Therefore under the rule of law above stated, the plaintiff should not be called upon to make allegations further than the supposed libellous matter as to offenses charged ; neither is he called upon to construe the said libellous matter, nor is he bound to select and rely upon any one offense or charge if there should be several therein. He may rely upon any or all actionable charges therein contained.

We think therefore that the demurrer should be overruled.

---

The defendant having filled a certain special plea, which he relied upon as a plea of probable cause, *Hilles,* for plaintiff, on February 15, 1903 (before LORE, C. J. and BOYCE, J.), moved that

the plea be stricken out, on the ground that the Court had already decided, at the argument upon the demurrer to the pleas in the same case (*3 Pennewill, 545*) that such a plea was covered by the general issue.

The plea was thereupon ordered stricken out.

On February 20, 1903 (before LORE, C. J., and SPRUANCE and BOYCE, J. J.), the case came on for trial. While the defendant was upon the stand, after detailing certain conversations that he had had with the plaintiff, he was asked by his counsel to detail to the Court and the jury what took place at Dover the last day of the legislative session of 1899, so far as it related to the matter before the Court.

*Mr. Hilles* objected to the above question, on the ground that under the plea of not guilty, the defendant could not put in any evidence of facts or circumstances going to prove the truth of any allegation contained in the libel, or which would tend to prove the same.

After an extended argument by counsel on both sides and the citation of numerous authorities, the Court rendered the following opinion, overruling the objections and admitting the evidence.

LORE, C. J.:

The defendant under the general issue, in mitigation of damages and for the purpose of rebutting express malice, offers to prove facts and circumstances connecting the plaintiff with the charges made in the alleged libel, at and about the time of its publication, of such a character as reasonably to induce in his mind a belief of those facts.

It is distinctly stated that the evidence is not offered in justification or in proof of the truth of the alleged libel, but only in mitigation of damages.

In this action punitive or exemplary damages are claimed,

which involve the issue that the alleged libel was wantonly malicious, and, therefore, that the defendant should pay to the plaintiff not only the actual damage, but a further sum, in the discretion of the jury, by way of punishment.

The plaintiff contends that under the general issue, particular facts and circumstances cannot be given in evidence, but only general reputation, or, at most, common rumor as to the particular charge; and that nothing can be so given in evidence that proves, or tends to prove, the truth of the charge.

The argument of counsel has been very able, and discloses that there is not only much conflict, but much confusion in the authorities upon this subject.

This Court has heretofore decided, in this very case, that under our law and practice, whatever is properly admissible in mitigation of damages may be proved under the general issue, and cannot be specially pleaded.

As this evidence is offered, not in proof, or as tending to prove the truth of the charges, but only to disprove malice, we think the weight of authority, as well as sound reason, dictates that the defendant should be permitted to show such facts and circumstances surrounding the case as tend to rebut malice and show reasonable cause.

We think this conclusion is not in conflict with the authorities in our own State, when carefully examined as to their scope and purpose.

It may be urged that this would compel the plaintiff to meet a multitude of facts and circumstances of which he had no notice in the pleadings. This may show the propriety of ordinarily putting upon the record in some form or other the facts so relied upon, but works no hardship in this case, inasmuch as the defendant states specifically that the plaintiff has had notice of the facts and circumstances sought to be proved, and which have been set out in pleas heretofore ruled upon.

We are, therefore, of opinion that all pertinent facts and cir-

cumstances that are offered for, and clearly go in mitigation of damages, may be proved under the general issue, subject to the charge of the Court, that such evidence can in no wise justify the libel or go in bar of the action.

### PLAINTIFF'S PRAYERS.

1.   If the jury shall believe from the evidence that the defendant company published the libel in the declaration mentioned their verdict must be for the plaintiff.

*Parke vs. Blackiston, 3 Harr., 373; Kinsey vs. Hosea, 3 Harr., 397; Layton vs. Harris, 3 Harr., 406; Croasdale vs. Bright, 6 Houst., 52, 59; Kennedy vs. Woodrow, 6 Houst., 46; Delaware Fire &c. Co. vs. Croasdale, 6 Houst., 181, 209, 210; Nailor vs. Ponder, 1 Marvel, 408, 414.*

2.   The article which is the subject of this suit is libellous *per se,* and the law implies malice from the publication of such an article.

3.   If the jury shall find that there was actual malice on the part of Jerome B. Bell, the Editor of the *Star*, they may award punitive damages.

4.   The law in this case will presume that the plaintiff has sustained actual damage from the libellous matter, and the amount thereof is an amount entirely within the discretion of the jury.

5.   "There is no doubt that the public acts of a public man may lawfully be made the subject of fair comment or criticism, not only by the press, but by all members of the public.   But the distinction cannot be too clearly borne in kind between comment or criticism and allegations of fact, such as that disgraceful acts have been committed or discreditable language used.   It is one thing to comment upon or criticise, even with severity, the acknowleged or proved acts of a public man, and quite another to assert that he has

been guilty of particular acts of misconduct. In the present case the appellants, in the passages which were complained of as libellous, charged the respondent, as now appears, without foundation, with having been guilty of specific acts of misconduct, and then proceeded on the assumption that the charges were true, to comment upon his proceedings in language in the highest degree offensive and injurious. Not only so, but they themselves vouched for the statements by asserting that, though some doubt had been thrown upon the truth of the story, the closest investigation would prove it to be correct. In their lordships' opinion there is no warrant for the doctrine that defamatory matter thus published is regarded by the law as the subject of any privilege."

*Davis vs. Shepstone, L. R. 11, App. Cas., 187; Burke vs. Advertiser Newspaper Co., 154 Mass., 238; Post Publishing Co. vs. Hallam, 59 Fed., 530 (539); Newell on Slander, 533; 18 Am. and Eng. Ency. of Law, 1042 and cases cited.*

6. The owner or controller of a printing press has no more right to print libellous matter than any one else.

*Delaware Fire &c. Co. vs. Croasdale, 6 Houst. 181, 195.*

7. If the jury shall believe that the defendant published the article in question, the defendant will be liable if they shall believe that it was published maliciously, even though they shall believe that the defendant believed the charges to be true at the time they were made.

The Editor of the *Star*, who was the writer of the article in question, and the President of the defendant company having testified as follows relative to the publication declared on :—

" Q. Has the time ever gone by to do a man justice if you have done him an injustice? A. I did not think then that I had done him an injustice and I do not think so now. Q. You are of opinion now that you have not done Mr. Donahoe any injustice? A. I am positively of that opinion. Q. You think these articles

are all proper publications about a man ? A. Under the circumstances I do and I am very positive in that opinon,"—the evidence of facts and reputation cannot be considered by the jury in mitigation of damages.

## DEFENDANT'S PRAYERS.

1. That to find express malice, the jury must be satisfied by the evidence in the case, that in publishing the rumors concerning the plaintiff, the defendant was actuated by ill-will against the plaintiff and maliciously intended to do him injury.

*Nailor vs. Ponder, 1 Marvel 408 (414).*

2. That if from the evidence the jury believe, that the conduct of the plaintiff upon the occasion mentioned, was such as induced the defendant to believe the plaintiff did what the defendant published concerning him, and that the defendant did not make the publication maliciously, they should find a verdict for the defendant.

*Bradley vs. Heaf, 12 Pick, 163 ;* and cases cited on brief.

3. That in order to make the defendant liable for the publication of the supposed libel, it must appear by the evidence that it acted maliciously and without probable cause.

*Cook vs. Hill, 3 Sandf., 341 (350) ;* and cases cited on brief.

4. That probable cause is a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.

*Bouvier's Law Dict.,—title, Probable Cause ; Commonwealth vs. Odell, 3 Pittsburg, 449, 461.*

5. That if the jury find from the evidence, that the defendant in publishing the alleged libel, was not actuated or influenced by ill-will against the plaintiff, but was inspired to use the language

complained of, by reason of indignation at the reprehensible conduct of the plaintiff upon the occsaion named, as it was informed by common report, then the jury should render a verdict for the defendant.

*Nailor vs. Ponder, 1 Marvel, 408 (414).*

6.   That in determining the existence of express malice in connection with the publication complained of, the jury may consider the frequency and publicity of the rumors and reports concerning the plaintiff tending to prove the offenses charged against him in the said alleged libel, and they may consider the proofs concerning the conduct of the plaintiff, and the common rumors and reports affecting the integrity of his conduct, as evidence tending to prove the good faith which prompted the publication of the alleged libel.

*Nailor vs. Ponder, 1 Marvel, 408 (414).*

7.   That the jury may consider the proofs concerning the conduct of the said plaintiff and the common rumors and reports affecting the integrity of his conduct, as evidence tending to prove the good faith which prompted the publication of the alleged libel.

*Nailor vs. Ponder, 1 Marvel, 408 (414).*

8.   That the freedom of the press was undoubtedly intended to be secured on public grounds, and the general purposes may be said to be to preclude those in authority from making use of the machinery of the law, to prevent full discussion of political and other matters in which the public are concerned.   With this end in view, not only must freedom of discussion be permitted, but there must be exemption afterward from liability, for any publication made in good faith, and in the belief of its truth, the making of which, if true, would be justified by the occasion.   There should consequently be freedom in discussing, in good faith, the character, the habits, mental and moral qualifications of any person presenting

himself, or presented by his friends, as a candidate for a public office, to be voted for by the electors. The same freedom of discussion should be allowed when the character and official conduct of one holding a public office is in question, and in all cases where the matter discussed is one of general public interest.

*Cooley on Torts, star page 217 ;* and cases cited on brief.

9. That the said publication was criticism of the plaintiff's official conduct; that criticism is a discussion, or, as applicable in libel cases, a censure of the conduct or character or utterances of the person criticised, and when one becomes a candidate for public office he thereby deliberately places his conduct, character and integrity before the public for their discussion and consideration. They may be criticised according to the taste of the writer or speaker and the law will protect them in so doing, provided that, in their statements of or references to the facts upon which their criticisms are based, they observe an honest regard for the truth. *In such a discussion the law gives a wide liberty.*

Within this limit public journals may express opinions and indulge in criticisms upon the character or habits, or mental and moral qualifications of official candidates.

*Belknap vs. Ball, 83 Mich., 583 (587, 588) ; Com. vs. Clappt 4 Mass., 163 ; Sweeney vs. Barker, 13 W. Va., 158 (183); Mayran, vs. Richardson, 1 Nott, & McCord, 347 (350).*

10. That when a public newspaper makes a publication concerning the integrity, fitness and fidelity of a candidate for a public office, which newspaper circulates among the electors who have the right to vote for or against such candidate, and the publication is made in good faith, for public information, it is a privileged communication.

11. That although the jury may believe from the evidence, that the defendant published the libellous words charged in the declaration, of and concerning the plaintiff, yet, if the jury further believe, from the evidence, that the defendant did not originate the

rumor upon which the libel is founded, that it merely published for public information what others had said concerning the plaintiff, and that it acted without malice in publishing such rumors, then the jury may give nominal damages only.

*Nailor vs. Ponder, 1 Marvel 408 ; Del. State F. & M. Ins. Co. vs. Croasdale, 6 Houst. 181 (211) ; Parke vs. Blackiston, 3 Harr. 373 (379) ; Kinney vs. Hosea, 3 Harr. 397 (399) ; Morris vs. Barker, 4 Harr. 520.*

12. That although the jury may believe, from the evidence, that the defendant published the libellous words, charged in the declaration, of and concerning the plaintiff, yet, if the jury further believe, from the evidence, that the defendant did not originate the rumor upon which the libel is founded, that it merely published for public information what others had said concerning the plaintiff, and that it acted without malice in publishing such rumors, and that the plaintiff was, in reality, in no manner injured by the publication, then the jury may give nominal damages only.

*Nailor vs. Ponder, 1 Marvel 408 ; Bel. State F. & M. Ins. Co. vs. Croasdale, 6 Houst., 181 (211) ; Parke vs. Blackiston, 3 Harr. 373 (379) ; Kinney vs. Hosea, 3 Harr., 379 (399) ; Morris vs. Barker, 4 Harr. 520.*

LORE, C. J., charging the jury :

Gentlemen of the jury :—The plaintiff in his declaration alleges that the defendant company maliciously composed and published, in a public newspaper called *The Star*, issued by the defendant on the second day of September, 1900, a libel containing among other things, certain defamatory charges as to the conduct of the plaintiff, while a member of the General Assembly of the State of Delaware, in the session of 1899.

The plaintiff avers that he has been injured by such publication, and claims both compensatory and punitive damages therefor.

To this declaration the defendant has pleaded not guilty.

It is not disputed that the alleged libel was actually published in *The Star*, a newspaper owned and issued by the defendant, on the day named. The first question that meets you therefore is, was it maliciously published.

The words of the alleged libel impute to the plaintiff a crime punishable by the laws of this State and are actionable in themselves. In such case the law presumes malice, and implies that the plaintiff has received some damage. Upon the plea of not guilty, the plaintiff, therefore, is entitled to your verdict for nominal damages. He would also be entitled to such actual or compensatory damages, as he may have shown you by the proof in this case that he has sustained; if any such proof there be.

The plaintiff insists that he has proved not only the malice implied by law from the character of the libellous publication, but that express malice has also been proved, viz., that the libel was composed and published in a vindictive and malevolent spirit, with a malicious intent to injure the plaintiff, and that therefore he is entitled to punitive or exemplary damages.

Express malice must be proved; it is never implied or presumed. It may be proved, however, either directly or indirectly.

To rebut express malice, and in mitigation of damages, the defendant has been permitted, under the ruling of the Court, to put in evidence by a number of witnesses, the acts, expressions and conduct of the plaintiff, and the conditions surrounding him on the last day of the session of the Legislature of 1899—being the time set forth in the alleged libel; and also to prove the general reputation and rumors relating thereto which came to the defendant before the publication of the libel. Such testimony was admitted by the Court solely for the purpose of rebutting express malice and in mitigation of damages, and in no manner may be considered by you as a justification or in bar of this action.

In determining, therefore, whether there was express malice or not, it is your duty to consider all such acts, expressions and conduct of the plaintiff, the circumstances surrounding him, coupled

with such general rumors and reputation as may have been proved. If upon careful examination you are satisfied that they were such as would reasonably impress a fair-minded man that the plaintiff was then acting corruptly as alleged in the libel, and that the defendant was so impressed when the libel was composed and published, you should give such proof all due weight in rebutting express malice, and in mitigating the damages claimed by the plaintiff. For in that case such reasonable cause for belief, and evidence that the defendant acted thereon alone, would rebut and disprove express malice.

Ordinarily under the general issue the defendant may prove that the publication was a privileged one. The defendant insists that under the facts and circumstances proved in this case that this libel was privileged. The defendant claims that the plaintiff at the time of the publication was a candidate for public office, and as such submitted himself to all proper criticism as to character and fitness therefor; that the matter contained in the said libel was only such proper criticism.

The right of free discussion in the public press, of the conduct of public officers, and of candidates for public office, is safeguarded by the Constitutions of the United States and of the several states.

The Constitution of this State, adopted in 1792, contains the following provision, which has ever since remained unchanged :

"The press shall be free to every citizen who undertakes to examine the official conduct of men acting in a public capacity; and any citizen may print on any subject, being responsible for the abuse of that liberty." (*Art. 1, Sec. 5.*)

What is the extent of that liberty and what is the abuse of it?

The greatest freedom is allowed in the discussion and criticism of the acknowledged or proved acts of a public man (*Davis vs. Shepstone, 11 Appl. Cas. L. R., 187*), but publications of falsehoods

(even about public officers or candidates for office) are never privi-
leged. (*Belknap vs. Ball, 83 Mich., 583.*)

In an action for damages for writing or publishing an alleged
libel, the defendant, under a statute of this State (*Ch. 449, Vol. 11,
Laws of Del.*) may plead and prove the truth of the charge, and
that it was written or published properly for public information,
and with no malicious or mischievous motives.

If such a plea is made and sustained by proof, it is a complete
defense to the action.    But if, on the other hand, in an action such
as this, the defendant files no such plea of justification in bar of the
action, but files only, as in this case, the general plea of not guilty,
the utmost effect of evidence that the defendant had probable cause
to believe that his charge against the plaintiff was true, and that
the publication was made for the public good, would be to negative
express malice and thus defeat the claim for exemplary damages.

The law as to privilege is well stated by Lord Hershall in
*Davis vs. Shepstone, 11 Appl. Cas., L. R., 187*, where he used these
words: "There is no doubt that the public acts of a public man
may lawfully be made the subject of fair comment and criticism,
not only by the press, but by all members of the public.    But the
distinction cannot be too clearly borne in mind between comment
or criticism and allegations of fact, such as that disgraceful acts
have been committed or discreditable language used.    It is one
thing to comment upon or criticise, even with severity, the acknowl-
edged or proved acts of a public man, and quite another to assert
that he has been guilty of particular acts of misconduct."

This seems to be a leading case, and has been quoted and ap-
proved as such in the case of *Burt vs. Advertiser Newspaper Com-
pany, 154 Mass., 238*, where Judge Holmes adds: "If one privi-
leged citizen wrote to another that a high official had taken a bribe,
no one would think good faith a sufficient answer to an action.
He stands no better, certainly, when he publishes his writing to the
world through a newspaper, and the newspaper itself stands no bet-
ter than the writer.    *Sheckell vs. Jackson, 10 Cush., 25.*"

Again, in *Post. Pub. Co. vs. Hallam, 59 Fed., 529,* Judge Taft approves this case, and adds: " That the public acts of public men could be lawfully made the subject of comment and criticism, not only by the press, but also by all members of the public, for the press had no higher rights than the individual; but that while criticism and comment, however severe, if in good faith were privileged, false allegations of fact, as for instance, that he committed disgraceful acts, were not privileged, and that if the charges were false, good faith and probable cause were no defence, though they might mitigate damages."

The law therefore seems to be clear that false allegations of fact, charging a candidate for office with a criminal offense are not privileged, and if the charges are false, good faith and probable cause are no defense. In such case the publisher of the libel takes his own risk, and can justify only by proving the truth of the charge.

In our judgment the doctrine of privileged publication is not applicable to this case, and you may not consider it in reaching your verdict.

With this instruction upon the law we now say to you :

That in any event you should find a verdict for the plaintiff for nominal damages.

In the absence of express malice, your verdict should be confined to nominal damages, unless the plaintiff has proved that he has suffered some actual damage. If he has made such proof, whatever actual damage has been so proven should be added to nominal damages.

If you should be satisfied, however, that express malice has been proved, and that the publication was maliciously and vindictively made with intent to injure the plaintiff, you may give exemplary damages, such as the circumstances of the case may warrant, to punish the defendant and to deter others from like offenses without regard to proof of actual damages. Punitive damages however, can only be given where there is clear proof of express malice.

Verdict for plaintiff for $700.